ORIGINAL

1  J. Paul Gignac (State Bar No. 125676)
   Kiley L. Grombacher (State Bar No. 245960)
2  ARIAS OZZELLO & GIGNAC LLP
   4050 Calle Real, Suite 130
3  Santa Barbara, California 93110-3413
   Telephone: (805) 683-7400
4  Facsimile: (805) 683-7401

5  Attorneys for Plaintiff

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 BRUCE KEISER, on behalf of himself and     Case No.
   all others similarly situated,
12
                Plaintiff,                    COMPLAINT FOR DAMAGES AND
13                                            DECLARATORY AND INJUNCTIVE
   v.                                         RELIEF
14
   DIRECTV, INC., a California corporation;   CLASS ACTION
15 and DOES 1 through 10, inclusive,
                                              DEMAND FOR JURY TRIAL
16              Defendants.

17

18

19        All allegations in this Complaint are based upon information and belief except those

20 allegations that pertain to Plaintiff, which are based on personal knowledge. Plaintiff's

21 information and belief are based upon, *inter alia*, Plaintiff's own investigation and the

22 investigation conducted by Plaintiff's attorneys. Each allegation in this Complaint either has

23 evidentiary support or, alternatively, is likely to have evidentiary support after a reasonable

24 opportunity for further investigation and/or discovery.

                            **NATURE OF THE ACTION**
25
26        1.    This is an action to enjoin ongoing, unfair business practices and to recover

27 monetary damages and restitution arising out of Defendants' unlawful practice of unilaterally

28 extending their customers' programming commitment term when their customers make a change

_____

                                    COMPLAINT FOR DAMAGES, DECLARATORY AND
                                                    INJUNCTIVE RELIEF

in the equipment needed to obtain satellite TV service from DirecTV, Inc. ("DirecTV"). Such equipment changes can be in the form of adding new equipment or replacing faulty, broken or outdated equipment.

2. Defendants' practice violates the standardized Customer Agreement and the standardized Equipment Lease Addendum that DirecTV enters into with its customers. Defendants' wrongful practice predictably involves small amounts of damages, and Defendants are attempting to carry out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

3. Defendants should be ordered to cease their wrongful practice and should be required to refund to their present and former customers the money that Defendants wrongfully collected as a result of their practice.

## PARTIES

4. Plaintiff Bruce Keiser ("Plaintiff") is a resident of the State of California, living in Los Gatos, California.

5. Defendant DirecTV is a California corporation with its principal place of business located in El Segundo, California. DirecTV provides satellite TV service to consumers throughout the United States.

6. Plaintiff does not know the true names and capacities of Does 1 through 10, inclusive, whether individual, corporate, association or otherwise and, therefore, sues said defendants, and each of them, by such fictitious names. Plaintiff will amend this Complaint to include their true names and capacities when they have been ascertained. Each of these Doe defendants is in some manner legally responsible for the events, happenings, injuries and damages alleged in this Complaint.

7. As used herein, the term "Defendants" refers to DirecTV and the Doe defendants.

8. In this Complaint, when reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, employees or representatives who was

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

1    actively engaged in the management, direction, control or transaction of the ordinary business

2    and affairs of Defendants.

3    **JURISDICTION AND VENUE**

4          9.     This Court has subject matter jurisdiction over this action pursuant to 28

5    U.S.C. § 1331 because Plaintiff alleges that Defendants have violated the Federal

6    Communications Act, 47 U.S.C. § 201 *et seq.* ("FCA") and the Declaratory Judgment Act, 28

7    U.S.C. § 2201 *et seq.* ("DJA").

8         10.     Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because this is a

9    class action involving more than one hundred class members in which many of the proposed

10   class members are residents of states other than California, where DirecTV is incorporated, and

11   because the total amount in controversy exceeds $5,000,000.

12        11.     This Court should exercise supplemental jurisdiction over the state law

13   claims under 28 U.S.C. § 1367 because they are derived from a nucleus of operative facts that is

14   common to the federal law claims such that Plaintiff and Defendants ordinarily would expect to

15   try both the federal law claims and the state law claims in a single proceeding.

16        12.     This Court has personal jurisdiction over Defendants because Defendants

17   have purposefully availed themselves of the privilege of conducting business activities within

18   the State of California by employing workers within the State of California and selling their

19   services within the State of California.  Defendants generally have maintained systematic and

20   continuous business contacts within the State of California.

21        13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2)

22   because Defendants transact substantial business within this judicial district which subjects

23   Defendants to personal jurisdiction in this judicial district.  Additionally, a substantial part of the

24   events giving rise to the claims asserted by Plaintiff took place in this judicial district.

25        **FACTS RELATING TO PLAINTIFF**

26        14.     In or about February of 2007, Plaintiff entered into a Customer Agreement

27   and Equipment Lease Addendum with DirecTV.  In so doing, Plaintiff committed to a two-year

28   programming term for satellite TV service that would expire on February 22, 2009.

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

15.   In or about January of 2008, Plaintiff contacted DirecTV to inquire about obtaining programming service for a second television at his home.  Plaintiff was told that he could either lease a second receiver directly from DirecTV or purchase a receiver from Best Buy for self-installation at his home.  Plaintiff was told that under both options he would be charged a fee of $4.99 per month for the second receiver, that he could cancel the second receiver fee at any time by simply notifying DirecTV and returning the second receiver to DirecTV, and that the addition of the second receiver would not change his programming commitment term.

16.   Plaintiff opted to purchase a second DirecTV receiver from Best Buy.  Plaintiff self-installed the DirecTV receiver at his home and contacted DirecTV to activate programming service to the additional DirecTV receiver.  Service was activated, and Plaintiff was billed $4.99 per month for a "leased receiver" on his monthly bills from DirecTV.

17.   In or about January of 2009, Plaintiff contacted DirecTV to confirm the upcoming expiration date of his programming commitment term.  Plaintiff first spoke with a customer service representative who informed Plaintiff that his programming commitment term would expire in January of 2010.  Plaintiff requested an explanation as to why his programming commitment term had been extended from February 2009 to January of 2010.  The explanation provided by the customer service representative was not satisfactory to Plaintiff.

18.   Plaintiff was then transferred to a supervisor who told him that his programming commitment term would expire on January 2, 2010.  The supervisor told Plaintiff that his programming commitment term had been extended for two years when Plaintiff activated service on the additional DirecTV receiver that Plaintiff self-installed at his home in January of 2008.  Plaintiff was told that the extension of his programming commitment term was authorized under the terms of the Customer Service Agreement and the Equipment Lease Addendum.  Plaintiff was told that these two documents detailed the terms of service and that nothing that any sales representative had told Plaintiff, or had failed to tell Plaintiff, mattered.  However, neither document provides that a DirecTV customer's programming commitment term will be extended for two years if the customer activates programming service on an additional DirecTV receiver.

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

19.     At no time during the process of obtaining and self-installing the additional DirecTV receiver was Plaintiff informed by any representative of DirecTV that, by doing so, Plaintiff's programming commitment term would be extended for two years.  Plaintiff was not told so when he initially inquired about obtaining programming service for a second television in his home.  Plaintiff was not told so when he went to Best Buy and picked up the additional DirecTV receiver (and there was nothing stated on his receipt).  And Plaintiff was not told so when he called to activate programming service on January 2, 2008.

20.     Although Plaintiff's programming commitment term should have terminated on February 22, 2009, owing to the unilateral extension of his programming commitment term by DirecTV, Plaintiff has been forced to either: (a) continue his programming service with DirecTV; or (b) discontinue his programming service and pay a significant early termination fee.  To date, Plaintiff has chosen to continue his programming service and has been required to pay approximately $70 per month in order to do so.

### SIMILAR COMPLAINTS BY OTHER CUSTOMERS OF DIRECTV

21.     Other customers of DirecTV residing in states throughout the country have complained about being subjected to the same wrongdoing experienced by Plaintiff.  In each case, DirecTV unilaterally extended the customer's programming commitment term due to a change in the equipment needed to obtain satellite TV service or the addition of new equipment.

22.     A customer in Pittsburgh, Pennsylvania agreed to a two-year programming commitment term in December of 2005.  In September of 2007, the customer experienced reception problems, and a DirecTV serviceman replaced the customer's DVR.  In December of 2007, when the customer cancelled his DirecTV service at the conclusion of his two-year programming commitment term, the customer was told that he owed $270 as an early cancellation fee because his programming commitment term had been extended by two years when he obtained the replacement DVR.  The customer was not informed that his programming commitment term would be extended when he received the replacement DVR.

23.     A customer from Greenwood Village, Colorado agreed to a one-year programming commitment term which was due to expire in March of 2008.  When the customer

1    contacted DirecTV to inform DirecTV that he would not be renewing his service, the customer

2    was informed that his programming commitment term had been extended to twenty-four months

3    due to the type of receiver provided to the customer.  DirecTV claimed that the customer owed

4    DirecTV $150 due to the early termination of the twenty-four month programming commitment

5    term.  The customer was never informed that his programming commitment term would be

6    extended due to his specific type of receiver.

7            24.    A customer from California initiated service with DirecTV in or about

8    2003.  Sometime in 2006, the customer's TIVO box failed.  The customer contacted DirecTV

9    and was provided with a new TIVO box.  The customer later discovered that his programming

10   commitment term had been extended for two years when he was given the new TIVO box.  The

11   customer was forced to replace his TIVO box multiple times and, each time, his programming

12   commitment term was restarted from the date on which the TIVO box was replaced.  When the

13   customer attempted to terminate his service, he was told that he would owe DirecTV $13.00 per

14   month for each month remaining in his extended programming commitment term. The customer

15   was never informed that his programming commitment term would be extended each time his

16   TIVO box was replaced.

17           25.    A customer from Yucaipa, California initiated service with DirecTV in or

18   about 2004.  In February of 2008, the customer's DVR failed.  The customer called DirecTV

19   and was provided with a new DVR.  In January of 2009, the customer called DirecTV to

20   terminate his service.   At that time, the customer was informed that his programming

21   commitment term had been extended until February 2010 when he obtained the new DVR in

22   February of 2008.   The customer was told that he would be charged $240 as an early

23   cancellation fee if he cancelled his service.   The customer was not informed that his

24   programming commitment term would be extended when he received the replacement DVR.

25           26.    Another customer of DirecTV terminated service in August 2008 after

26   more than ten years of service with DirecTV.  Upon termination, the customer was billed $300

27   for an early termination fee. When the customer called DirecTV to inquire as to the basis for the

28   early termination fee, the customer was informed that her programming commitment had been

COMPLAINT FOR DAMAGES, DECLARATORY AND
                                                                    INJUNCTIVE RELIEF

1  extended by twenty-four months when her nonfunctioning set-up box had been replaced by

2  DirecTV a few months earlier. The customer was not informed that her programming

3  commitment term would be extended when she received the replacement set-up box. When the

4  customer protested the imposition of the early termination fee, she was told that her account

5  would be sent to a collection agency.

6  **CLASS ACTION ALLEGATIONS**

7  27.    Plaintiff brings this class action pursuant to Rules 23(a), (b)(2), and (b)(3)

8  of the Federal Rules of Civil Procedure on behalf of one or more classes of customers of

9  DirecTV as defined herein.  Plaintiff is a member of each of the classes that he seeks to

10  represent.

11  28.    If the Court determines, as Plaintiff contends, that California law applies to

12  the claims of all customers of DirecTV, then Plaintiff shall seek to represent a nationwide class

13  ("the Nationwide Class") as to all claims for relief alleged herein.  Plaintiff proposes to define

14  the Nationwide Class as follows:

> All customers of DirecTV who reside in the United States, whose
> programming commitment term was extended by DirecTV upon a
> change in/addition to their equipment, and who were charged and
> paid fees for programming or termination of their programming
> during the extended period of their programming commitment term
> at any time between May 15, 2005 and the date of class certification
> in this action.

29.    If the Court determines that California law does not apply to the claims of

all customers of DirecTV, then Plaintiff shall seek to represent a multi-state class ("the Multi-

State Class") as to the claims for relief alleged under the FCA and the DJA.  Plaintiff proposes

to define the Multi-State Class as follows:

> All customers of DirecTV who reside in one of the Twelve States[1],
> whose programming commitment term was extended by DirecTV
> upon a change in/addition to their equipment, and who were
> charged and paid fees for programming or termination of their

[1] The Twelve States are: California, Washington, Oregon, Arizona, New Mexico, Missouri, Illinois, Wisconsin, Michigan, North Carolina, New Jersey and Massachusetts.

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

programming during the extended period of their programming commitment term at any time between May 15, 2007 and the date of class certification in this action.

30.     If the Court determines that California law does not apply to the claims of all customers of DirecTV, then Plaintiff also shall seek to represent a California resident class ("the California Subclass") as to all claims for relief alleged herein. Plaintiff proposes to define the California Subclass as follows:

> All customers of DirecTV who reside in the State of California, whose programming commitment term was extended by DirecTV upon a change in/addition to their equipment, and who were charged and paid fees for programming or termination of their programming during the extended period of their programming commitment term at any time between May 15, 2005 and the date of class certification in this action.

31.     The Nationwide Class, the Multi-State Class and the California Subclass shall be referred to herein collective as "the Classes", and members of one or more of the Classes shall be referred to herein generally as "Class Members".

32.     The following customers of DirecTV shall be excluded from the Classes and therefore shall not qualify as Class Members: (a) all employees, officers, directors, agents and legal representatives of Defendants; (b) any judge, justice or judicial officer assigned to hear any proceeding in relation to this case; and (c) all persons who validly exclude themselves from one or more of the Classes.

33.     While the exact number of members of each of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in each of the Classes is ascertainable based upon the billing records maintained by Defendants. The Classes each consist of at least hundreds, if not thousands, of members, the identities of whom are within the knowledge of and can be ascertained by Defendants by reference to their customer records. Therefore, the Classes are each sufficiently numerous that joining all members of the Classes in a single action is impracticable under Fed. R. Civ. P. 23(a)(1), and the resolution of

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

their claims through the procedure of a class action will be of benefit to the parties and the Court.

34.     Common questions of law and fact exist as to the members of each of the Classes, as required by Fed. R. Civ. P.  23(a)(2), and predominate over any questions which affect only individual members of the Classes within the meaning of Fed. R. Civ. P.  23(b)(3).

35.     The common questions of fact include, but are not limited to, the following:

a.     whether Defendants unilaterally extend their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers;

b.     whether Defendants properly, sufficiently and/or adequately disclose to their customers that an equipment change or addition will result in their programming commitment term being extended;

c.     whether Defendants charge their customers for programming service during the period of time that their customers' programming commitment term has been unilaterally extended due to a change in or an addition to their equipment; and

d.     whether Defendants charge their customers an "early termination fee" or other cancellation fees if their customers terminate service during the period of time that their customers' programming commitment term has been unilaterally extended due to a change in or an addition to their equipment.

36.     The common questions of law include, but are not limited to, the following:

a.     whether Defendants' actions and conduct constitute an unjust and unreasonable charge or practice in violation of § 201(b) of the FCA;

b.     whether Defendants' actions and conduct entitle Plaintiff and the Class Members to declaratory relief under the DJA;

- 9 -

c.    whether Defendants' actions and conduct breach the terms of their contracts with Plaintiff and the Class Members;

d.    whether Defendants' actions and conduct violate one or more provisions of the Consumers Legal Remedies Act, California Civil Code §1750 *et seq.*;

e.    whether Defendants' actions and conduct constitute "unfair competition" within the meaning of and in violation of California Business and Professions Code §17200, *et seq.*; and

f.    whether Defendants, by their actions and conduct, have been unjustly enriched at the expense of Plaintiff and the Class Members.

37.    Plaintiff's claims are typical of the claims of the other Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each of the Class Members have been subjected to the same improper practices and have been damaged in the same manner.

38.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is committed to the vigorous prosecution of this action on behalf of the Class Members and, to that end, Plaintiff has retained counsel experienced in complex consumer class actions and consumer litigation. Plaintiff does not have any interests which are antagonistic to or are in conflict with the Class Members whom Plaintiff seeks to represent.

39.    A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because:

a.    the expense and burden of individual litigation make it economically unfeasible for Class Members to seek redress other than through the procedure of a class action;

b.    if separate actions were brought by individual Class Members, the resulting duplicity of lawsuits would cause undue hardship and

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1               expense to the Court and the litigants by necessitating multiple

2               trials of similar factual issues; and

3         c.     absent a class action, Defendants likely will retain the benefits of

4               their wrongdoing, and there will be a failure of justice.

5      40.     In the alternative, this action is certifiable under the provisions of Fed. R.

6 Civ. P. 23(b)(2) because:

7         a.     the prosecution of separate actions by individual Class Members

8               would create a risk of inconsistent or varying adjudications with

9               respect to individual Class Members which would establish incom-

10               patible standards of conduct for Defendants;

11         b.     the prosecution of separate actions by individual Class Members

12               would create a risk of adjudications with respect to them which

13               would, as a practical matter, be dispositive of the interests of the

14               other Class Members not parties to the adjudications, or

15               substantially impair or impede their ability to protect their interests;

16               and

17         c.     Defendants have acted or refused to act on grounds generally

18               applicable to the Class Members, thereby making appropriate final

19               injunctive relief or corresponding declaratory relief with respect to

20               the Class Members as a whole and necessitating that any such relief

21               be extended to the Class Members on a mandatory, class-wide

22               basis.

23      41.     Plaintiff is aware of no difficulty likely to be encountered in the

24 management of this litigation that should preclude its maintenance as a class action.

25      42.     The names and addresses of the Class Members are available from

26 Defendants' records. Notice can be provided to the Class Members via first class mail or

27 otherwise using techniques and a form of notice similar to those customarily used in consumer

28 class actions arising under California state law and federal law. Specifically, notice can be

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

1   provided to Class Members who are current customers of DirecTV by including a notice in the

2   monthly bill sent to DirecTV's customers with the minimal cost of such notice to be borne by

3   Defendants.

### FIRST CLAIM FOR RELIEF
**(Violation Of The Federal Communications Act, 47 U.S.C. § 201)**

6   43.   Plaintiff hereby incorporates by reference the allegations contained in

7   paragraphs 1 through 42 of this Complaint.

8   44.   Plaintiff brings this claim for relief on behalf of himself, the members of

9   the Nationwide Class, the members of the Multi-State Class, and the members of the California

10   Subclass.

11   45.   Defendants are common carriers engaged in interstate communication by

12   wire for the purpose of furnishing communication services within the meaning of § 201(a) of the

13   FCA.

14   46.   Defendants'   practice   of   unilaterally   extending   their   customers'

15   programming commitment term upon a change in or an addition to their equipment without

16   authorization by their customers constitutes an unjust and unreasonable charge and practice in

17   connection with communication service and, therefore, violates § 201(b) of the FCA.

18   47.   As a direct and proximate result of Defendants' violation of § 201(b) of the

19   FCA, Plaintiff and the Class Members have been damaged in an amount according to proof at

20   trial.

21   48.   Unless Defendants are enjoined from continuing to violate §201(b) of the

22   FCA, Plaintiff and the Class Members will continue to be injured by Defendants' actions and

23   conduct.

### SECOND CLAIM FOR RELIEF
**(Declaratory Judgment Under 28 U.S.C. § 2201)**

26   49.   Plaintiff hereby incorporates by reference the allegations contained in

27   paragraphs 1 through 42 of this Complaint.

28

- 12 -

50.     Plaintiff brings this claim for relief on behalf of himself, the members of the Nationwide Class, the members of the Multi-State Class, and the members of the California Subclass.

51.     An actual controversy has arisen and now exists between Plaintiff and the Class Members, on one hand, and Defendants, on the other hand, concerning their respective rights and duties.   Plaintiff and the Class Members contend that Defendants' practice of unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers is improper and unlawful, while Defendants maintain that their actions and conduct are lawful and proper.

52.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff and the Class Members may ascertain their rights and duties with respect to Defendants' practice of unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers.

### THIRD CLAIM FOR RELIEF
**(Breach Of Contract)**

53.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint.

54.     Plaintiff brings this claim for relief on behalf of himself, the members of the Nationwide Class, and the members of the California Subclass.

55.     Plaintiff and each of the Class Members entered into written agreements with Defendants under which Defendants were required to provide Plaintiff and the Class Members with satellite TV programming service for a fixed period of time ("the programming commitment term").

56.     The written agreements that Plaintiff and the Class Members entered into with Defendants are uniform with respect to the provisions applicable to the claims asserted against Defendants.   True and correct copies of exemplars of these written agreements are attached hereto as Exhibits "1" and "2" and incorporated herein by this reference.

- 13 -

57.     The written agreements entered into between Plaintiff and the Class Members, on the one hand, and Defendants, on the other hand, include a covenant of good faith and fair dealing implied by law that prohibits Defendants from engaging in conduct that interferes with their customers' rights to receive the benefits of the written agreements and from engaging in arbitrary and/or unfair acts that would disadvantage and/or unfairly take advantage of Defendants' customers.

58.     Plaintiff and each of the Class Members have performed all conditions, covenants and promises required to be performed on their part in accordance with the terms and conditions of their written agreements, except to the extent such performance was excused, released or waived by the actions, conduct or agreement of Defendants.

59.     Defendants breached their contractual obligations under the written agreements with Plaintiff and each of the Class Members by unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers.

60.     Alternatively, Defendants breached the implied covenant of good faith and fair dealing in their written agreements with Plaintiff and each of the Class Members by unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers.

61.     As a direct and proximate result of Defendants' breach of their written agreements, Plaintiff and the Class Members have been damaged in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

62.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint.

63.     Plaintiff brings this claim for relief on behalf of himself, the members of the Nationwide Class, and the members of the California Subclass.

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

64.     Defendants' practice of unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers is unfair, inequitable and/or unconscionable.

65.     As a direct and proximate result of Defendants' unfair, inequitable and/or unconscionable practice, Defendants have been unjustly enriched at the expense of and to the detriment of Plaintiff and the Class Members.

66.     By reason of Defendants' conduct, Plaintiff and the Class Members are entitled to restitution of all monies paid to Defendants during the period of time that their programming commitment term has been unilaterally extended by Defendants due to a change in equipment.

## FIFTH CLAIM FOR RELIEF
**(Violation Of The Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*)**

67.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint.

68.     Plaintiff brings this claim for relief on behalf of himself, the members of the Nationwide Class, and the members of the California Subclass.

69.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

70.     Plaintiff and each of the Class Members are a "consumer" within the meaning of California Civil Code § 1761(d).

71.     The satellite TV programming service that Plaintiff and each of the Class Members obtained from Defendants comes within the definition of "services" set forth in California Civil Code § 1761(b).

72.     By engaging in the practice of unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers, Defendants have violated, and continues to violate, the CLRA in at least the following respects:

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

a. Defendants have used deceptive representations in connection with services in violation of section 1770(a)(4) of the CLRA;

b. Defendants have represented that services have characteristics or benefits which they do not have in violation of section 1770(a)(5) of the CLRA; and

c. Defendants have represented that a transaction confers or involves rights which it does not have or involve in violation of section 1770(a)(14) of the CLRA.

73. Defendants have inserted an unconscionable provision in their agreements in violation of section 1770(a)(19) of the CLRA that, under certain circumstances, requires Plaintiff and the Class Members to forego the right to pursue a class action.

74. Unless Defendants are enjoined from continuing to engage in violations of the CLRA, Plaintiff and the other Class Members will continue to be injured by Defendants' wrongful actions and conduct.

## SIXTH CLAIM FOR RELIEF
### (Violation Of California Business and Professions Code § 17200, *et seq.*)

75. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42, of this Complaint.

76. Plaintiff brings this claim for relief on behalf of himself, the members of the Nationwide Class, and the members of the California Subclass.

77. Defendants have engaged in and continue to engage in an unfair, unlawful and fraudulent business practice of unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers.

78. By engaging in this practice, Defendants have committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200, *et seq.*

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

79.     Defendants' practice is unfair because it is not fully and adequately disclosed at the time that customers of Defendants contract to obtain their satellite TV service through Defendants and, therefore, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members.

80.     Defendants' practice is unlawful because it violates the FCA and the CLRA. Defendants' practice is also unlawful because it constitutes a breach of contract and unjust enrichment.

81.     Defendants' practice is fraudulent because it has deceived and is likely to deceive the Class Members.

82.     Unless Defendants are enjoined from continuing to engage in this unfair, unlawful and fraudulent business practice, Plaintiff and the other Class Members will continue to be injured by Defendants' wrongful actions and conduct.

83.     So as not to be unjustly enriched by their own wrongful actions and conduct, Defendants should be required to disgorge and restore to Plaintiff and the other Class Members all monies wrongfully obtained by Defendants as a result of Defendants' unfair, unlawful and fraudulent business practice.

## **RELIEF REQUESTED**

84.     Plaintiff, on behalf of himself and the Class Members, requests that this Court order the following relief and enter judgment against Defendants as follows:

### On The First Claim For Relief

85.     For compensatory damages in an amount according to proof at trial;

86.     For prejudgment interest through the date of entry of judgment;

87.     For an order enjoining Defendants from unilaterally extending their customers' programming commitment term upon a change in or an addition to their equipment without authorization by their customers; and

88.     For reasonable attorneys' fees as permitted by 47 U.S.C. § 206.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1                 On The Second Claim For Relief

2            89.     That this Court declare that Defendants' practice of unilaterally extending

3 their customers' programming commitment term upon a change in or an addition to their

4 equipment without authorization by their customers is improper and unlawful.

5                 On The Third Claim For Relief

6            90.     For compensatory damages in an amount according to proof at trial; and

7            91.     For prejudgment interest through the date of entry of judgment.

8                 On The Fourth Claim For Relief

9            92.     For disgorgement and restitution to Plaintiff and the Class Members of all

10 monies wrongfully obtained and retained by Defendants; and

11            93.     For prejudgment interest through the date of entry of judgment.

12                 On The Fifth Claim For Relief

13            94.     For an order enjoining Defendants from unilaterally extending their

14 customers' programming commitment term upon a change in or an addition to their equipment

15 without authorization by their customers.

16                 On The Sixth Claim For Relief

17            95.     For disgorgement and restitution to Plaintiff and the Class Members of all

18 monies wrongfully obtained and retained by Defendants;

19            96.     For an order enjoining Defendants from unilaterally extending their

20 customers' programming commitment term upon a change in or an addition to their equipment

21 without authorization by their customers; and

22            97.     For prejudgment interest through the date of entry of judgment.

23                 On All Claims For Relief

24            98.     For all attorneys' fees, expenses and recoverable costs reasonably incurred

25 in connection with the commencement and prosecution of this action, provided that this action

26 results in a common fund for the benefit of the Class Members and/or confers a substantial

27 benefit on the Class Members; and

28            99.     For such other and further relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

1

**JURY TRIAL DEMAND**

2

Plaintiff demands a jury trial by jury of all issues so triable in this action.

3

Dated: May 14, 2009                    ARIAS OZZELLO & GIGNAC LLP

4

5

By:  J. Paul Gignac (State Bar No. 125676)

6

Kiley L. Grombacher (State Bar No. 245960)
ARIAS OZZELLO & GIGNAC LLP
4050 Calle Real, Suite 130

7

Santa Barbara, California 93110-3413
Telephone:  (805) 683-7400

8

Facsimile:  (805) 683-7401

9

Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, DECLARATORY AND
INJUNCTIVE RELIEF

# EXHIBIT 1

## DIRECTV - Customer Agreement



**CUSTOMER AGREEMENT**
Effective as of April 24, 2007, until replaced

THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING. TO VIEW THIS AGREEMENT IN SPANISH VISIT DIRECTV.COM/ACUERDO OR CALL 1-888-388-6622 TO REQUEST A PRINTED COPY. (VISITE A DIRECTV.COM/ACUERDO O LLAME AL 1-888-388-6622 PARA SOLICITAR ESTE DOCUMENTO.)

**CONTACTING DIRECTV:**

You may contact us 24 hours a day, any day of the year, by sending us an email at directv.com/email or by writing to:

Customer Service
DIRECTV, Inc.
P.O. Box 6550
Greenwood Village, CO 80155-6550

You can also call us at 1-800-531-5000 and speak your request into our Automated Phone System, e.g., For technical issues — say "technical"; For on-screen messages — say the extension or message you see on your screen; To pay your bill — say "pay my bill"; For programming questions — say the name of the package or service, etc.

If your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information provided on your bill for any questions about your DIRECTV Service.

Thank you for choosing DIRECTV. DIRECTV provides digital satellite entertainment programming and services (referred to collectively as "Service") to residents of the United States. We do not provide Service to addresses outside of the United States.

**CUSTOMER AGREEMENT**

**1. OUR SERVICE**

These are the terms on which we will provide you Service

(a) **Program Choices.** You must subscribe to a base package in order to receive additional Services such as premium movie services or sports subscriptions. All programming selections have their own rates, terms, and conditions. Information about programming is at DIRECTV.com.

2/2/2008 9:46 AM

**(b) Ordering Pay Per View.** You may order pay per view Services by using your on-screen guide and remote control, by ordering at DIRECTV.com, by calling and speaking the name of your event into our Automated Phone System, or by ordering through an agent. If you call an agent to order, the maximum fee may apply (described in section 2). A reduced fee is available for pay per view orders placed at directv.com or through the Automated Phone System.☐

To use your remote control to order, your receiver must be continuously connected to a land-based telephone line. Your order is transmitted via the telephone line, and during the short transmission period, you may not be able to use the line for other purposes. Repeated cancellation of previously ordered pay per view Services may result in cancellation of your account, restrictions on your ability to order pay per view Services, or imposition of additional fees for pay per view Services.

**(c) Your Programming Changes.** You may change your programming selection by notifying us. A fee may apply to such changes (described in Sections 2 & 5(b)). Some programming may be purchased in minimum blocks of one month or multiples of one month.

**(d) Our Programming Changes.** Many changing considerations affect the availability, cost and quality of programming and customer demand for it. Accordingly, we must reserve the unrestricted right to change, re-arrange, add or delete our programming packages, the selections in those packages, our prices, and any other Service we offer, at any time. We will endeavor to notify you of any change that is within our reasonable control and its effective date. In most cases, this notice will be about one month in advance. You always have the right to cancel your Service, in whole or in part, if you do not accept the change (see Section 5). If you cancel your Service, a deactivation fee (described in Sections 2 and 5(b)) or other charges may apply. Credits, if any, to your account will be posted as described in Section 5. If you do not cancel, your continued receipt of our Service will constitute acceptance.

**(e) Access Card.** You have received a conditional access card (referred to as the "Access Card") and a License Agreement governing your use of the Access Card while you are receiving our Service. Access Cards are nontransferable and are the exclusive property of DIRECTV. If you tell us that the original Access Card was lost, damaged, defective or stolen, we will replace it, as long as there is no evidence of unauthorized tampering with or modification of the Access Card and your account is in good standing. A replacement fee may apply (described in Section 2). Tampering with or other unauthorized modification of the Access Card is strictly prohibited and may result in criminal or civil action. Tampering with or inserting any device into your receiver other than an authorized unmodified Access Card is prohibited. DIRECTV reserves the right to cancel or replace the Access Card. Upon request, the card must be returned to DIRECTV. If you do not return the Access Card to DIRECTV when you cancel your Service, you may be charged a fee as described in Section 2. Requesting Access Cards on behalf of other persons or for purposes other than lawful viewing of DIRECTV Service is prohibited.

**(f) Phone Connections.** For optimal performance of your Receiving Equipment, including ordering with your remote control or receiving certain Services, each of your receivers must be directly connected to the same land-based telephone line. If you add Service on additional TVs, you may purchase a separate subscription for each additional TV, or, if all your receivers are continuously connected to the same land-based telephone line, we can "mirror" programming to your additional TVs and charge you only the fee amount described in Section 2. You agree to provide true and accurate information about the location of your receivers. If we detect that any receiver is not regularly connected to a land-based telephone line, we may investigate and, if it is determined that the receiver is not at the location identified on your account, we may disconnect the receiver or charge you the full programming subscription price for the receiver.

**(g) Mobile Units.** We provide Service to Receiving Equipment installed in mobile units such as campers, boats and other recreational vehicles. However, this Receiving Equipment is not eligible for the additional TV authorization discount described in 1(f).

**(h) Private Viewing.** We provide Service only for your private non-commercial use, enjoyment, and home viewing. The programming may not be viewed in areas open to the public or in commercial establishments. You may not rebroadcast, transmit, or perform the programming, charge admission for its viewing, or transmit or distribute running accounts of it. You may not use any of our trademarks. Notwithstanding the provisions of Section 9, we or any programming provider may prosecute violations of the foregoing against you and other responsible parties in any court of competent jurisdiction, under the rules and regulations of the Federal Communications Commission, and other applicable laws.

**(i) Blackouts.** Certain programming, including sports events may be blacked out in your local reception area. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit DIRECTV.com for more blackout information. If you circumvent or attempt to circumvent any of these blackouts, you may be

subject to legal action.

(j) **Loss of Receiving Equipment.** You should notify us immediately if your receiver, remote control or receiving antenna dish (referred to collectively as "Receiving Equipment") is lost or stolen. If you notify us within 5 days, we will not charge you for any unauthorized use. In any case, we will not charge you for unauthorized use occurring after we receive your notice. For leased Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum will apply.

(k) **Transfer of Receiving Equipment.** We consider you to be responsible for, and the recipient of our programming on, any Receiving Equipment you own. You are liable for charges incurred in the use of your Receiving Equipment by others until you notify us of a transfer. Leased Receiving Equipment may not be transferred.

(l) **Your Viewing Restrictions.** It is your responsibility to impose any viewing restrictions on other family members or guests, as you think appropriate. We are not responsible to you or anyone else based on the content of our programming. Please visit DIRECTV.com for information on parental controls, locks and limits, and password protection for your account.

(m) **Change of Address.** You must notify us immediately of any change in your name, mailing address, residence address or telephone number.

## 2. PAYMENT

In return for receiving our Service, you promise to pay us as follows:

(a) **Programming.** You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your permission, until the Service is canceled. The outstanding balance is due in full each month. We may, in our discretion, accept partial payments, which will be applied to the oldest outstanding statement. No "payment in full" notation or other restrictive endorsement written on your payments will restrict our ability to collect all amounts owing to us. We may reduce your Service to a minimum service level, at our rates in effect at the time, or deactivate your Service if you do not pay your statements on time, after any applicable grace period

(b) **Taxes.** You will pay all taxes or other governmental fees and charges, if any, which are assessed.

(c) **Administrative Fees.** In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances only to those customers responsible for them. This list is not exclusive, and DIRECTV reserves the right to modify these fees or charge additional fees. Accordingly, you will pay the following fees when they are applicable:

(1) *Account Activation Fee:* We may charge you a fee of: (i) up to $100.00 ; or (ii) the maximum amount permitted under applicable law prior to or upon activation of your Service account, whichever is less.

(2) *Access Card Replacement Fee:* If you do not return the Access Card when requested to do so, or if we have to replace the Access Card, we may charge you a replacement fee of up to $300.00. If you return the old Access Card to us, you may receive partial credit to your account. If you request overnight delivery of the replacement Access Card, you must pay a shipping and handling fee of up to $16.50.

(3) *Additional TV Authorization Fee:* If you meet the qualifications described in Section 1(f), we may charge you a monthly fee of up to $4.99 for separate Services on each additional TV, rather than a full subscription fee for Services on each additional TV. This reduced rate is available only if all receivers are located at your residence.
(4) *Administrative Late Fee:* If we do not receive your payment by the due date on your bill, we may charge you an administrative late fee (i) $5.00 or (ii) the maximum amount permitted under and subject to applicable law per month or partial month until the delinquent amount is paid in full. This late fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature. You acknowledge that this fee is reasonably related to the actual expense we incur due to late payment and may be subject to limitations set forth by law in your state.

(5) *Change of Service Fee:* If you change your Service package to a lower-priced package, we may charge you a fee the lesser of (i) up to $10.00 or (ii) the maximum amount permitted by applicable law.

(6) *Phone Payment Fee:* If you elect to pay any outstanding balance over the telephone with an agent, we may charge you the lesser of (i) up to $10.00 ; or (ii) the maximum amount permitted by applicable law. To avoid this fee you can pay your bill

through our Automated Phone System by saying "pay my bill," or at directv.com.

(7) *Deposits:* We may require that you provide a deposit prior to or after activation of your Service, which we may apply against any unpaid amounts at any time. Deposits will appear on your bills as credits, from which we will deduct our charges. Deposits will not earn interest.

(8) *Order Assistance Fee:* If you order a pay per view Service by calling and speaking with an agent, we may charge you a fee of up to $5.00, or up to $1.50 if you order via our Automated Phone System, for each separate movie, event or other program so ordered, even if it is later canceled. There is no order assistance fee for orders placed at directv.com.

(9) *Deactivation Fee:* If you cancel your Service or we deactivate your Service because of your failure to pay or for some other breach on your part, we may charge you a fee the lesser of (i) up to $15.00 ; or (ii) the maximum amount permitted by applicable law.

(10) *Duplicate Statement Fee:* If you request a duplicate statement, we may charge you a fee the lesser of (i) up to $1.75 ; or (ii) the maximum amount permitted by applicable law for each statement copy.

(11) *Ledger Request Fee:* If you request a payment ledger itemizing past payments on your account, we may charge you a fee the lesser of (i) up to $2.75 ; or (ii) the maximum amount permitted by applicable law.

(12) *Returned Payment Fee:* If any bank or other financial institution refuses to honor any payment, draft or instrument submitted for payment to your account, we may charge you a fee the lesser of (i) up to $20.00 , or (ii) the maximum amount permitted by applicable law. You acknowledge that this fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature and it is reasonably related to the actual expense we incur due to unsatisfied payment.

(d) **Billing Statements.** We will send you a statement for each billing cycle (usually once every 30 days) unless you have a zero or nominal balance due, or a nominal credit balance, on your account at the end of a billing cycle. Statements will show: (1) payments, credits, purchases, and any other charges to your account (2) the amount you owe us and (3) the payment due date. If you elect to make automatic credit or debit card payments, you will not receive monthly statements unless you request that they be sent.

(e) **Questions About Your Statement.** If you think your statement is incorrect or if you need more information about it, contact us immediately. We will try to resolve any complaints you have as promptly as we can.

**Undisputed portions of the statement must be paid by the due date to avoid a late fee and possible reduction or deactivation of Service.**

Remember, if your bill for DIRECTV Service comes from a party other than DIRECTV please use the contact information on your bill

(f) **Consents Regarding Credit.** In order to establish an account with us, you authorize us to inquire into your creditworthiness (subject to Section 6), by checking with credit reporting agencies. If you are delinquent in any payment to us, you also authorize us to report any late payment or nonpayment to credit reporting agencies. Due to the subjective nature of creditworthiness, we reserve the right to require pre-payment for any Service via cashier's check, money order, or credit card, notwithstanding your credit rating, past history or practice.

(g) **Collection Costs.** To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us.

### 3. CUSTOMER INFORMATION

(a) **Representations.** You represent that you are at least 18 years of age and a resident of the United States.

(b) **Contact Information.** You agree to provide true, accurate, current and complete contact information about yourself, and maintain and promptly update your contact information to keep it true, accurate, and complete.

(c) Online Access. You are responsible for maintaining the confidentiality of the password and account username used for online billing and account maintenance at DIRECTV.com, and are fully responsible for all activities that occur under your password and account. You agree to: (i) keep your username and password confidential and not share them with anyone else; (ii) immediately notify DIRECTV of any unauthorized use of your password and account or other breach of security, and (iii) use only your username and password to log into DIRECTV.com.

## 4. CHANGES IN CONTRACT TERMS

We reserve the right to change the terms and conditions on which we offer Service. If we make any such changes, we will send you a copy of your new Customer Agreement containing its effective date. You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such changed terms or conditions. If you do cancel, you may be charged an early cancellation fee if you entered into a separate programming commitment or a deactivation fee. You will be issued a credit, if any, in accordance with Section 5. If you elect not to cancel your Service after receiving a new Customer Agreement, your continued receipt of Service from us will constitute acceptance of the changed terms and conditions. If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided in Section 5, as we cannot offer Service to different customers on different terms, among other reasons.

## 5. CANCELLATION

(a) Term. The term of this Agreement is indefinite and Service will continue until canceled as provided herein. UNLESS YOU NOTIFY US THAT YOU WISH TO CANCEL IT, WE WILL AUTOMATICALLY RENEW SERVICE THAT YOU SUBSCRIBE TO ON A PERIODIC BASIS, INCLUDING ANY MONTHLY OR ANNUAL SUBSCRIPTIONS AND SEASONAL SPORTS SUBSCRIPTIONS, AS LONG AS WE CONTINUE TO CARRY THE SERVICE.

(b) Your Cancellation. You may cancel Service by notifying us. You may be charged a deactivation fee as described in Section 2 and issued a credit as described below. Your notice is effective on the day we receive it. You will still be responsible for payment of all outstanding balances accrued through that effective date. In addition to any deactivation or change of service fees provided in Section 2, if you cancel Service or change your Service package, you may be subject to an early cancellation fee if you entered into a separate programming commitment with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required programming package for the required period of time.

For Services sold only in blocks of one month or multiples of one month, if you cancel such Service, we will credit you only for full months not used. For example, if you subscribe for a year of such Service from January through December but cancel on March 10, we will credit you for the subscription fees for April through December. However, we will not credit any fees for January through March. Additionally, we will not credit seasonal sports subscriptions after the season starts.

(c) Our Cancellation. We may cancel your Service at any time if you fail to pay amounts owing to us when due, subject to any grace periods, or breach any other material provision of this Agreement, or act abusively toward our staff. In such case, you will still be responsible for payment of all outstanding balances accrued through that effective date, including the deactivation fee described in Section 2. In addition, we may cancel your Service if you elect not to accept any changed terms described to you, as provided in Section 4.

(d) Credit Balances. If you have a credit balance after the close of your account and issuance of the final bill, we will automatically issue you a refund. However, if your credit balance is less than $1.00, we will not issue you a refund unless you make a written request for the refund. If you do not make such a written request for the refund within one year of the close of your account, you forfeit any credit balance remaining on your account and your account balance will be reset to zero.

(e) Payment Upon Cancellation. You acknowledge that you have provided your credit or debit card account information to us. You understand that you will incur fees and charges as a result of your receipt and use of Service and/or Receiving Equipment, and may incur early cancellation fees and/or equipment non-return fees (as specified in any lease, programming or other service commitment agreement you entered into in connection with obtaining Receiving Equipment). By giving us your credit or debit card account information, you authorize us to apply this method of payment, in accordance with applicable law, to satisfy any and all amounts due upon cancellation. You further acknowledge that you are required to maintain current credit or debit card information with us and agree to notify us whenever there is a change in such information, such as a change in the card number or the expiration date.

## 6. PERSONAL DATA

We collect personally identifiable information about our customers ("Personal Data"). The use and disclosure of this Personal Data is governed by our Privacy Policy and, to the extent not inconsistent with the Privacy Policy, by this Agreement. A copy of our Privacy Policy is available at DIRECTV.com We will also send you a copy if you send your written request to this address: DIRECTV Privacy Policy, P.O. Box 6550, Greenwood Village, CO 80155-6550

## 7. DIRECTV ® DVR SERVICE

DIRECTV DVR Service is a separately sold service, at our rates in effect at the time, available to customers with DVR-enabled Receiving Equipment. DIRECTV DVR Service gives you the ability to see and record televised programs ("Third Party Content"). You understand that DIRECTV does not guarantee the access to or recording of any particular program, or the length of time any particular recorded program may remain available for your viewing. You also understand that Third Party Content is the copyrighted material of the third party that supplies it, is protected by copyright and other applicable laws, and may not be reproduced, published, broadcast, rewritten, or redistributed without the written permission of the third party that supplied it, except to the extent allowed under the "fair use" provisions of the U.S. copyright laws or comparable provisions of foreign laws. You agree that DIRECTV will have no liability to you, or anyone else who uses your DIRECTV DVR Service, with regard to any Third Party Content. DIRECTV may, at its discretion, from time to time change, add or remove features of the DIRECTV DVR Service, or change the service fee for DIRECTV DVR Service.

We generally use local telephone calls to provide the DIRECTV DVR Service. You are responsible for such telephone charges and acknowledge and agree that you shall be solely responsible for all disputes with any telephone company related to the same.

If you paid a "lifetime service fee," you will not be charged a fee for your DIRECTV DVR Service as long as you maintain television programming service from DIRECTV on the same account. If you disconnect your DIRECTV television programming service and later reconnect on the same account, your DIRECTV DVR service will be reconnected and you will not be charged a fee for DIRECTV DVR Service.

By receiving the DIRECTV DVR Service, you agree to the following license. The term "Software" shall include any updates, modified versions, additions and copies of certain software for the DIRECTV DVR Service (or your Receiving Equipment) that may be provided by DIRECTV from time to time. The term "End User Documentation" shall mean the documentation and related explanatory written materials provided to you in connection with licensing by you of any Software. DIRECTV grants to you a non-exclusive license to use the Software, provided that you agree to the following:

(a) License Grant. You may use the Software solely in executable code form and solely in conjunction with the use of your Receiving Equipment.

(b) Restrictions. You may not copy, modify, or transfer, disseminate or publish the Software, or any copy thereof, in whole or in part. You may not reverse engineer, disassemble, decompile or translate the Software, or otherwise attempt to derive the source code of the Software, except to the extent allowed under any applicable law. Any attempt to transfer any of the rights, duties or obligations of this license agreement is void. You may not rent, lease, load, resell for profit or distribute the Software, or any part thereof.

(c) Ownership. The Software is licensed, not sold, to you solely for your use under the terms of this license agreement, and DIRECTV and its suppliers reserve all rights not expressly granted to you. You shall own the media, if any, on which Software or End User Documentation is recorded, but DIRECTV and its suppliers retain ownership of all copies of the Software itself.

(d) Reservation of Rights. Except as stated above, this license agreement does not grant to you any intellectual property rights in the Software.

(e) Term. If you breach any term or condition of this license agreement, this license agreement will terminate immediately upon notice to you.

(f) Warranty Disclaimer. NEITHER DIRECTV NOR ANY OF ITS REPRESENTATIVES MAKES OR PASSES ON TO YOU OR OTHER THIRD PARTIES ANY WARRANTY OR REPRESENTATION ON BEHALF OF DIRECTV OR ITS SUPPLIERS (INCLUDING TIVO) WITH RESPECT TO THE SOFTWARE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

**(g) Limitation of Liability.** IN NO EVENT WILL DIRECTV OR ITS SUPPLIERS BE LIABLE TO YOU WITH RESPECT TO THE SOFTWARE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING LOST PROFITS OR LOST SAVINGS, EVEN IF DIRECTV OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, so the above limitations may not apply to you.

**(h) Third-Party Beneficiary.** DIRECTV and you expressly acknowledge and agree that TiVo, Inc., a Delaware corporation with its principal place of business at 2160 Gold Street , Alviso , CA 95002 , is an intended third-party beneficiary of this license agreement as it relates to TiVo Software that may be contained in the Receiving Equipment. These license provisions are made expressly for the benefit of TiVo and are enforceable by TiVo in addition to DIRECTV.

## 8. LIMITS ON OUR RESPONSIBILITY

**(a) Service Interruptions.** Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure or any other cause beyond our reasonable control. However, because we value our customers, for an interruption of a significant length of time that is within our reasonable control, upon your request we will provide what we reasonably determine to be a fair and equitable adjustment to your account to make up for such Service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

**(b) Disclaimers.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES OR REPRESENTATIONS, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT ARE DISCLAIMED.

**(c) Limitations of Liability.** WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES OR LOSSES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. REGARDLESS OF THE CAUSE, OUR TOTAL LIABILITY FOR DAMAGES OR LOSSES TO YOU AND ANY OTHER PERSONS RECEIVING OUR SERVICE, WILL IN NO EVENT EXCEED THE AMOUNT THAT YOU HAVE PAID TO US FOR THE SERVICE THAT YOU RECEIVED DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRIOR TO THE SPECIFIC EVENT THAT GAVE RISE TO THE APPLICABLE DAMAGE OR LOSS. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. You may have greater rights than described above under your state's laws. You should consult them.

**(d) Warranty Services.** You agree that this Agreement does not provide for, and the Service does not include, any warranty services or other services that we might provide separately, including, without limitation, any fee-based or other warranty programs.

## 9. RESOLVING DISPUTES

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

**(a) Informal Resolution.** We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

**(b) Formal Resolution.** Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in

accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

(1) Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2) Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

JAMS
500 N. State College Blvd., Suite 600
Orange, CA 92868
(800) 352-5267

(3) Send one copy of the demand for arbitration to the other party.

(c) Special Rules. (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction. (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable .

(d) Exceptions. Notwithstanding the foregoing: (i) any Claim based on Section 1(i) above, and (ii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. §§ 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, or any other statement or law governing theft of service, may be decided only by a court of competent jurisdiction.

10. MISCELLANEOUS

(a) Notice. Notices to you will be deemed given when personally delivered, addressed to you at your last known address and deposited in the U.S. Mail (which may include inclusion in your billing statement), or sent via internet to the email address you provided us, or sent via satellite to your receiver, or delivered when a voice message is left at the telephone number on your account. Your notices to us will be deemed given when we receive them at the address or telephone number on the first page of this Agreement.

(b) Applicable Law. The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

(c) Assignment of Account. We may assign your account or this Agreement and all rights and/or obligations hereunder to any third party without notice for any purpose, including, without limitation, collection of unpaid amounts, or in the event of an acquisition, corporate reorganization, merger or sale of substantially all of the party's assets to another entity. You hereby consent to such assignment. You must continue making all required payments to us in accordance with your billing statement, unless notified otherwise.

(d) Other. This Agreement and any lease, activation, programming, or other service commitment agreement that you entered into in connection with obtaining Receiving Equipment constitute our entire agreement. No salesperson or other representative is authorized to change it. If any provision is declared by a competent authority to be invalid, that provision will be deleted or modified to the extent necessary, and the rest of the Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

THANK YOU.

©2007 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. 05/07 28998CSS-1

2/2/2008 9:46 AM

# EXHIBIT 2

## DIRECTV - DIRECTV Equipment Lease Addendum



**PROGRAMMING AGREEMENT.** Within 30 days of provision of DIRECTV equipment to you, or on the date that the professional installer has installed or is prepared to install your DIRECTV equipment, whichever is sooner, you agree to activate each and every DIRECTV Receiver ordered by you or provided to you with any DIRECTV base programming package (valued at $29.99 per mo. or above); Jadeworld; or, any qualifying international service bundle, which bundle shall include either the DIRECTV BASIC programming package (valued at $9.99 per mo.) or the DIRECTV PREFERRED CHOICE™ programming package (valued at $29.99 per mo.) together with any WorldDirect™ international-language service. DVR service activation ($5.99/mo.) required for DVR leases; HD Access fee ($9.99/mo.) required for HD Receiver leases; and, both DVR service and HD Access fee payment required for HD DVR leases. In certain markets, programming and pricing may vary. DIRECTV PROGRAMMING AND PRICING SUBJECT TO CHANGE AT ANY TIME.

**PROGRAMMING COMMITMENT.** The programming package(s) must be maintained for a period of not less than (a) eighteen (18) consecutive months (for accounts with only standard receiver(s)), or (b) twenty-four (24) consecutive months (for accounts with advanced product(s)/receiver(s) (DVR), high definition receiver (HD) or high definition digital video recorder (HD DVR), including additional DIRECTV receiver(s)). After you have fulfilled your agreement to the required programming package(s), you are not obligated to continue your subscription to DIRECTV programming for any specific duration. Current DIRECTV customers may activate additional receivers with their existing DIRECTV programming package. THIS PROGRAMMING COMMITMENT IS SEPARATE AND DIFFERENT FROM ANY OTHER PROGRAMMING COMMITMENT YOU MAY HAVE MADE WITH DIRECTV AND IS FULLY ENFORCEABLE UNDER THESE TERMS.

**MONTHLY LEASE FEE.** For a new DIRECTV customer, you will be charged a monthly lease fee in the amount of $4.99 per 2nd and each additional receiver leased by you in your household. For a current customer, you will be charged a monthly fee in the amount of $4.99 for each receiver leased by you in your household, unless you replace all of your owned-equipment with leased equipment, in which case, the monthly lease fee will be waived for the 1st receiver. Applicable taxes will apply. LEASE FEE SUBJECT TO CHANGE AT ANY TIME.

**CARE OF EQUIPMENT.** You are responsible for the loss of or any damage to the DIRECTV equipment that you have leased from DIRECTV. You shall have no right to sell, give away, transfer, pledge, mortgage, remove, relocate, alter or tamper with the DIRECTV equipment at any time. DIRECTV PROVIDES YOU THE DIRECTV EQUIPMENT AS IS, AND MAKES NO WARRANTY, EITHER EXPRESSED OR IMPLIED, REGARDING THE DIRECTV EQUIPMENT PROVIDED TO YOU. ALL SUCH WARRANTIES INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED. DIRECTV IS NOT RESPONSIBLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THE DIRECTV EQUIPMENT PROVIDED TO YOU. In the event the DIRECTV equipment you have leased from DIRECTV does not operate, contact DIRECTV at 1-800-531-5000.

**CONSEQUENCES OF YOUR FAILURE TO ACTIVATE PROGRAMMING OR SATISFY YOUR PROGRAMMING COMMITMENT.** If you fail to activate all of your DIRECTV equipment in accordance with this Equipment Lease Addendum, you agree that DIRECTV or an authorized DIRECTV Retailer may charge you a fee, as liquidated damages, of $150 for each receiver that is not activated. If you fail to maintain your minimum programming commitment, you agree that DIRECTV may charge you a prorated fee of up to $360 for standard receivers and up to $480 for advanced products/receivers (e.g., DVR, HD, HD DVR, etc.).

**RETURN OF DIRECTV EQUIPMENT.** If you cease to be DIRECTV's customer for any reason (whether voluntarily or involuntarily)

or if you decide to disconnect/cancel/terminate your DVR service or HD Access fee (if you are leasing a DVR or HD Receiver), you must call DIRECTV within seven (7) days after the termination of your DIRECTV programming services, DVR service or HD Access fee, as applicable, to (i) make arrangements for DIRECTV to pick up all your DIRECTV equipment; or (ii) obtain information from DIRECTV necessary to arrange for a ground or air freight service to pick up and deliver all of your DIRECTV equipment to DIRECTV. You acknowledge that the DIRECTV equipment belongs to DIRECTV and the DIRECTV equipment, including the access card inserted into each receiver, must be returned to DIRECTV in good working order, normal wear and tear excepted. In the event that all of the DIRECTV equipment is not returned to DIRECTV within thirty (30) days of the termination of your DIRECTV programming services or is damaged when it is returned to DIRECTV, you agree to pay DIRECTV the sum of $55 per each DIRECTV standard receiver; $200 for each DIRECTV DVR Receiver; $240 for each DIRECTV HD Receiver; or $470 for each DIRECTV HD DVR Receiver that is not returned to DIRECTV or that is damaged when it is returned to DIRECTV as compensation for a portion of the expenses incurred by DIRECTV in establishing your account and providing you the DIRECTV equipment for your use. Visit DIRECTV.com or call 1-800-531-5000 for details.

ARBITRATION. You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.